IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| LISA LYLE, | ) |
|     Plaintiff, | ) |
| v. | ) Judge |
| | ) Magistrate Judge |
| GREEN TREE SERVICING LLC, | ) |
|     Defendant. | ) JURY DEMAND |

## COMPLAINT

COMES NOW Plaintiff, Lisa Lyle ("Plaintiff" or "Ms. Lyle") and submits the following as her causes of action against Defendant, Green Tree Servicing LLC ("Defendant" or "Green Tree"): Count One: violations of the Americans with Disabilities Act Amendments Act; and Count Two: retaliation for exercising rights under the Family Medical Leave Act.

1. Plaintiff is a citizen and resident of Sumner County, Tennessee.

2. Defendant is a foreign limited liability company formed in the state of Delaware and transacting business in the State of Tennessee. Its principal office is located at 345 Saint Peter St., Suite 1400, Saint Paul, MN 55102. It can be served through its registered agent, C T Corporation, 800 S. Gay St., Suite 2021, Knoxville, TN 37929.

### JURISDICTION AND VENUE

3. This action is brought under the Americans with Disabilities Amendments Act of 2008 and the Family Medical Leave Act.

4. This Court has jurisdiction under 28 U.S.C. §1331 to hear Plaintiff's claims arising under the Constitution and laws of the United States of America.

1

5. This Court has jurisdiction under 28 U.S.C. §1343(4) to hear Plaintiff's claims to recover damages and to secure equitable relief under any Act of Congress providing for the protection of civil rights.

6. Venue is appropriate in the Middle District of Tennessee under 28 U.S.C. §1391(b)(2) as this is the judicial district in which the events and omissions giving rise to this claim occurred.

## GENERAL FACTUAL ALLEGATIONS

1. Plaintiff was hired by Green Tree on April 26, 1997. Her job title was Collector. Her managers were Trebia Johns, Operation Manager, and Clay Borders, Regional Manager.

2. In early September 2012, Plaintiff was diagnosed with methicillin-resistant staphylococcus aureus ("MRSA").

3. Plaintiff's diagnosis and condition rendered her unable to enjoy one or more major life activities. As such Plaintiff is an individual with a disability as that term is defined in Section 3(2) of the ADA, 42 U.S.C. § 12102(2).

4. Upon hearing of her diagnosis, Green Tree asked Plaintiff to take a leave of absence from work. It was considered medical leave and not leave protected by the Family Medical Leave Act ("FMLA"). Plaintiff did not believe this leave would be counted as FMLA leave. Plaintiff returned to work after thirty days of medical leave, at the beginning of October.

5. On October 21, 2012, Plaintiff met a goal at work (a 30 day bucket) though she was working on a different queue than what she was in September 2012. Other coworkers who met the same goal were congratulated by management but Plaintiff received no praise or acknowledgement for her achievement. These coworkers were not disabled nor had they recently

taken medical leave. Thus Plaintiff began to be treated differently on the basis of her disability and in retaliation for taking medical leave.

6. Ms. Lyle's medical condition resulted in several unpleasant side effects and she needed to use the restroom more frequently and for longer periods of time.

7. Katie Ferguson, another member of management, soon pulled Plaintiff into the front office and interrogated her about her restroom breaks. She cited an incident when Plaintiff was in the restroom for 10 minutes and 11 seconds. This scrutiny and micromanaging made Ms. Lyle feel humiliated and embarrassed about her condition, and further discriminated against her on the basis of her disability, as no other employee's restroom break was timed down to the second.

8. Plaintiff was then told that she needed to begin using Aux 2 for everything except meetings. In the past she had used Aux 5 for everything except breaks and meetings. Ms. Ferguson told Plaintiff that it was necessary to know where she was at all times now and that she must only take scheduled breaks.

9. On November 30, 2012 Plaintiff again met a goal at work (a 30 day bucket). Again she was not recognized for her accomplishment while her non-disabled coworkers were praised.

10. On December 5, 2012 Ms. Ferguson told Ms. Lyle that she now needed permission to use the restroom. Plaintiff again explained that her frequent and longer bathroom breaks were a result of her medical condition but Ms. Ferguson insisted that she now get permission and inform her personally when she needed to use the restroom. Plaintiff felt harassed and further embarrassed on the basis of her disability.

3

11. On December 10, 2012 Plaintiff requested a meeting with Clay Borders and Trebia Johns and complained of harassment and a hostile work environment. She explained that another member of management, Nick, was following her around and reporting her restroom activity to Ms. Ferguson. Mr. Borders and Ms. Johns dismissed Plaintiff's complaints and told her no one was following her around.

12. Plaintiff received her yearly review in early January 2013. She was rated "meets or exceeds expectations" and she received a raise.

13. On January 9, 2013 Plaintiff sent an email to Human Resources representative Annie Campbell and complained of harassment and a hostile work environment. As a result Plaintiff was transferred to the supervision of another manager, Peggy Phathanak. On January 29, 2013 Ms. Campbell sent an email to Plaintiff asking how everything was going. Mr. Borders walked up behind Plaintiff as she was responding to Ms. Campbell's email, and wanted to know why she was communicating with Human Resources.

14. Just six weeks after receiving a satisfactory review and a raise, and five weeks after her complaint to Human Resources, Plaintiff was disciplined for not hitting her 30 day goal four months in a row. There is a causal connection between Plaintiff's complaints of discrimination and the discipline she received.

15. In May 2013 Plaintiff provided Human Resources a note from her physician stating the cause for her frequent and long restroom use. A few weeks later Human Resources representative Sara Judd called Plaintiff and asked for the approximate number of times she would need to use the restroom in an eight-hour work day and the duration of each time. This was demeaning, humiliating and degrading to Plaintiff and she felt further discriminated against

4

due to her disability. Even Plaintiff's physician expressed incredulity at an employer requesting that an employee submit the number and duration of each restroom visit.

16. Upon visiting her physician's office he recommended that she take medical leave and undergo surgery for her medical condition(s). Plaintiff was placed on FMLA leave on or around June 12, 2013.

17. Ms. Lyle's surgery was scheduled for July 29, 2013. When she informed Human Resources, they in turn told her that her FMLA leave expired on August 5, 2013. Plaintiff did not understand why it was ending so soon and Human Resources could not fully explain why. They said that Plaintiff had used twelve weeks from 2012 to the present time and it would expire on August 5. Plaintiff was unaware that any FMLA time had accrued other that her leave beginning on June 12, 2013.

18. Therefore against her physician's wishes Plaintiff intended to return to work on August 5, 2013, even though she would require the use of a walker, because needed to keep her job.

19. On August 5, 2013 Ms. Lyle received a phone call from Green Tree Human Resources and told she was being placed on "inactive" status and would no longer be paid, and would further receive paperwork for COBRA. She was told she was not being terminated but that there were no queues for her to work. But when Plaintiff went on medical leave there were five queues open and Mr. Borders had hired two additional people for the work.

20. On August 13, 2013 Plaintiff was officially released to return to work by her physician. That same day, Green Tree called and terminated Plaintiff.

21. The unlawful employment practices complained of above were and are intentional.

5

Case 3:15-cv-00023   Document 1   Filed 01/09/15   Page 5 of 7 PageID #: 5

22. Defendant at all relevant time acted with malice or reckless indifference to the federally protected rights of Ms. Kincaid.

23. Plaintiff exhausted all administrative remedies available to her and was issued a Right to Sue letter by the EEOC.

## COUNT ONE
## VIOLATIONS OF AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT

24. Defendant's harassment, discipline and termination of Plaintiff was part of a knowing and intentional pattern or discrimination in violation of the Americans with Disabilities Amendments Act.

25. As a direct and proximate result of Defendant's violation of the Americans with Disabilities Act as Amended, Plaintiff has suffered and continues to suffer loss of income and other employment benefits, and suffered and continues to suffer distress, humiliation, embarrassment, and emotional pain along with other as yet unspecified damages.

## COUNT TWO
## RETALIATION FOR ACTIVITY PROTECTED BY THE
## FAMILY MEDICAL LEAVE ACT

26. Plaintiff further alleges that she has been discriminated against and retaliated against for exercising her rights under the Family Medical Leave Act when requesting and utilizing medical leave.

27. As a result of the Defendant's intentional actions, Plaintiff has suffered a loss of income and benefits and is entitled to an award of compensatory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1. That proper process issue be served upon the defendant and that the defendant be required to answer within the time prescribed by law.

2. The plaintiff receive compensatory damages, reinstatement, back pay, and front pay against the defendant in an amount supported by the proof in this cause.

3. That this Court grant a permanent injunction in joining the defendant, as officers, successors, assigns and all persons in active consort or participation with it, from engaging in employment practice which discriminates on the basis of disability.

4. That this matter be set for a trial by jury.

5. That the plaintiff be awarded her reasonable fees, costs, fees and expenses incurred herein.

6. For all such other general or specific relief to which the plaintiff may be entitled as the Court deems and as justice and equity require.

Respectfully submitted,

ANDY L. ALLMAN & ASSOCIATES

Andy L. Allman, BPR No. 17857
103 BLUEGRASS COMMONS BLVD.
Hendersonville, TN 37075
Telephone: (615) 824-3761
Facsimile: (615) 824-2674
andy@andylallman.com

7

Case 3:15-cv-00023   Document 1   Filed 01/09/15   Page 7 of 7 PageID #: 7